**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OFFICEMAX, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No: 1:16 C 9111 |
| v. ) | |
| ) | Honorable Robert W. Gettleman |
| NHS HUMAN SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

*MEMORANDUM OPINION AND ORDER*

Plaintiff Officemax, Inc. ("Officemax") has filed a two count complaint against defendant NHS Human Services, Inc., ("NHS") alleging anticipatory repudiation and breach of contract. Defendant has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons described below, the court grants defendant's motion to dismiss.

*BACKGROUND [1]*

On June 10, 2011, Officemax and NHS entered into a sales agreement, effective as of July 1, 2011. The Sales Agreement provides that "Officemax shall be the primary supplier of all [NHS]-owned entities for copy paper, furniture, office supplies and toner," through June 30, 2016. The parties also agreed that NHS would purchase at least $1,350,000 of products per year from Officemax through 2016.

The complaint alleges that the parties intended to agree in advance to settlement of damages that might arise from defendant's breach of the Sales Agreement by failing to have Officemax be the primary supplier of products to NHS. Section 15 of the Sales Agreement

---

[1] The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion to dismiss. Murphy v. Walker, 51 F.3d 714, 717 (7th Cir.1995).

provides for liquidated damages "if Officemax terminates this Agreement due to a material breach by [NHS] which is not cured within ten (10) days of Officemax providing written notice of such breach to [NHS]." Section 15 of the Sales Agreement also provides a chart listing the amount of liquidated damages due to Officemax, depending on the date of termination. From 2011 to 2013, Officemax supplied millions of dollars of office supplies to NHS under the Sales Agreement.

No later than November 2013, Officemax and NHS entered the First Amendment to Sales Agreement ("First Amendment"). The First Amendment extended the term of the Sales Agreement to June 30, 2021, and increased NHS's minimum purchase amount. Section 2 of the Sales Agreement remained in effect, requiring that "Officemax shall be the primary supplier of all [NHS]-owned entities for copy paper, furniture, office supplies and toner." The First Amendment removed the language from section 15 regarding Officemax terminating "due to a material breach" by NHS, instead providing that Officemax is entitled to liquidated damages "if Officemax terminates this Agreement." The First Amendment also provides a new chart listing the amount of liquidated damages due to Officemax, depending on the date of termination.

The Sales Agreement and First Amendment (collectively, the "Contract") were signed by Officemax's Vice President of Sales, Anthony Nucera, and NHS's Chief Financial Officer ("CFO"), Kevin McClure. Mr. McClure was later replaced by Derrick Yacovelli as NHS's CFO. On October 1, 2015, Mr. Yacovelli communicated to Mr. Nucera that NHS may seek bids from other suppliers of copy paper, furniture, officer supplies, and toner, despite the Contract with Officemax. Mr. Yacovelli stated that he had no involvement in the negotiation of the Contract, and he was skeptical of the present benefits of the Contract. Mr. Yacovelli stated that he knew NHS would owe more than $1,000,000 if the Contract terminated and/or if NHS breached the

Contract. Mr. Yacovelli stated that, in doing "simple math," if NHS would save $200,000 over five years with a new supplier then it would be "worth it" to terminate and/or breach the Contract.

On February 9, 2016, NHS sent multiple request for proposal ("RFP") e-mails to Officemax titled "consumable/janitorial RFP" and "Office Supply RFP." One of the e-mails read "you are receiving this letter because you have been selected as potential supplier for office supplies for NHS." The RFP e-mails also stated that "[NHS] is soliciting bids for a three year period for the procurement and distribution of office supplies for its entire enterprise," and "the intention of NHS is to award an agreement for office supplies, cut paper and toner cartridges at a 100% level of business where the levels of service and cost meet the needs of NHS." The complaint alleges that "pursuant to the clear and unambiguous terms of the Contract, Officemax was not a 'potential supplier' to NHS for a 'three-year period' but rather Officemax must be the 'primary supplier' to NHS through 2021, [and] therefore NHS could not seek business from other companies to be the primary supplier of products."

Following the February 9 RFP e-mails, NHS e-mailed Officemax stating that "NHS has already issued and received responses from Officemax's competitors for products to be sent to all of NHS's facilities." On March 14, 2016, Officemax notified NHS of the termination of the Contract and demanded that NHS pay Officemax the sum of $1,050,000, pursuant to section 15 of the Contract. On April 4, 2016, Officemax e-mailed NHS following up on the March 14, 2016, notification of termination. On April 15, 2016, Officemax e-mailed NHS, providing notice that more than 30 days had passed since NHS's receipt of the termination letter and inquiring as to the status of payment to plaintiff of the $1,050,000. Thereafter, NHS acknowledged receipt of

the March 14 termination letter, but NHS has refused to pay the $1,050,000 demanded by Officemax.

*DISCUSSION*

I.      **Legal Standard**

In evaluating a motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). To survive such a motion, the complaint must allege sufficient facts which, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Twombly, 550 U.S. at 555. To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II.     **Defendant's Motion to Dismiss**

  A.    **Count I – Breach of Contract**

Count I alleges that defendant breached and/or anticipatorily repudiated the Contract. The court will address plaintiff's claims as if plead in separate counts.  Defendant seeks dismissal of plaintiff's breach of contract claim based on the following arguments: (1) the Contract does not contain a term that prohibits defendant from sending a request for proposal to other office supply chains; and (2) plaintiff fails to allege that defendant entered into a "primary supplier" contract with another office supply chain or otherwise purchased supplies from another provider. For the following reasons, the court agrees that plaintiff's breach of contract claim set forth in Count I should be dismissed.

Under Illinois law,[2] the elements for breach of contract are: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." Gonzalzles v. Am. Exp. Credit Corp., 315 Ill. App. 3d 199, 206 (1st Dist. 2000). "A breach can only exist where a party fails to carry out a term, promise, or condition of a contract." Talbert v. Home Sav. of Am., F.A., 265 Ill. App. 3d 376, 380 (1st Dist. 1994).

Defendant first argues that the Contract does not contain a term prohibiting defendant from sending a request for proposal to other office supply chains. The court agrees. The complaint alleges that "pursuant to the clear and unambiguous terms of the Contract, Officemax was not a 'potential supplier' to NHS for a 'three-year period' but rather Officemax must be the 'primary supplier' to NHS through 2021. Therefore, NHS could not seek business from other companies to be the primary supplier of products." The Contract attached to the complaint contains no term, however, prohibiting defendant from seeking business from other suppliers. Plaintiff's reference to the primary supplier term is illusory, because this term is silent as to whether defendant may seek business from other suppliers. Thus, plaintiff's allegations regarding defendant seeking business from other companies are insufficient to support plaintiff's claim for breach of contract.

Defendant next argues that to the extent plaintiff's complaint can be read to allege that defendant breached the "primary supplier" term of the Contract, plaintiff fails to allege that defendant actually entered into a primary supplier contract with another office supply chain or otherwise purchased supplies from another provider, such that plaintiff was no longer defendant's primary supplier. The court agrees. A complaint need not include "detailed factual allegations"

---

[2] The Contract contains a choice of law clause providing that "this agreement shall be governed and construed according to the laws of the State of Illinois." The parties do not dispute the validity of the choice of law provision.

to survive a Rule 12(b)(6) motion, but must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. The complaint alleges that defendant "failed to comply with the Contract and materially breached the Contract." But the complaint fails to allege facts supporting this "formulaic recitation," or that defendant breached the "primary supplier" term by actually entering another primary supplier contract or purchasing supplies from another provider. Thus, the complaint fails to allege sufficient facts to state a plausible claim for breach of contract. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

Consequently, the court grants defendant's motion to dismiss plaintiff's breach of contract claim set forth in Count I.

### B. Count I – Anticipatory Repudiation

Count I also alleges that defendant anticipatorily repudiated the Contract. Under Illinois law, "anticipatory repudiation is actionable... when the repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance." Busse v. Paul Revere Life Ins. Co., 341 Ill. App. 3d 589, 594 (2003). Put differently, "the doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance." In re Marriage of Olsen, 124 Ill. 2d 19, 25 (1988).

Defendant argues that the complaint fails to state a claim for anticipatory repudiation because plaintiff fails to plead a clear and unequivocal renunciation of the Contract by defendant. The court agrees. The complaint alleges that Mr. Yacovelli stated to plaintiff that "defendant *may* seek bids from other suppliers," and "*if* defendant] would save $200,000 over five years with a new supplier then it would be 'worth it' to terminate and/or breach the Contract." (emphasis added). Such indefinite statements regarding future performance are insufficient to

support a claim for anticipatory repudiation. Truman L. Flatt & Sons Co., Inc. v. Schupf, 271 Ill. App. 3d 983, 994 (4th Dist. 1995) ("[d]oubtful and indefinite statements that performance may or may not take place are not enough to constitute anticipatory repudiation"). Further, Mr. Yacovelli's alleged statements indicate that defendant intended to *perform* the Contract by paying the liquidated damages due to plaintiff, in the event that defendant breached or terminated the Contract. Olsen, 124 Ill. 2d at 25 ("anticipatory repudiation requires a clear manifestation of an intent *not* to perform the contract" (emphasis added)). The RFP e-mails also do not unequivocally state that defendant would not perform the Contract, because the e-mails do not clearly state that defendant would enter a new agreement with a supplier other than plaintiff. Schupf, 271 Ill. App. 3d at 994. Moreover, the e-mails do not refute Mr. Yacovelli's previous statements, indicating that defendant intended to perform the Contract by paying plaintiff liquidated damages if defendant entered an agreement with another supplier. Olsen, 124 Ill. 2d at 25.

Plaintiff argues that whether the alleged statements made by defendant constitute anticipatory repudiation of the Contract is a question of fact, which cannot be resolved on a Rule 12(b)(6) motion to dismiss. Honkomp v. Dixon, 97 Ill. App. 3d 476, 482 (1981) ("the issue of whether repudiation or anticipatory breach of the contract occurred is one of fact"); Buschmann v. Prof'l Men's Ass'n, 405 F.2d 659, 663 (7th Cir. 1969) ("it is well settled that it is improper for a court to decide a question of fact on a motion to dismiss for failure to state a claim"). The court disagrees. Whether a defendant's statements amount to anticipatory repudiation may be decided as a matter of law if there are no contested issues of material fact. Gateway Sys., Inc. v. Chesapeake Sys. Sols., Inc., 836 F. Supp. 2d 625, 632 (N.D. Ill. 2011) (granting summary judgement to defendant on plaintiff's anticipatory repudiation claim, when defendant's statement

taken as true, was "too doubtful and indefinite to amount to anticipatory repudiation"). In the instant case, there are no issues of fact as to the content of defendant's statements to plaintiff. Therefore, taking plaintiff's allegations as true, the court concludes that defendant's alleged statements do no amount to anticipatory repudiation. Id.

Plaintiff further argues for the application of a more relaxed pleading standard for anticipatory repudiation, where "[i]t is not necessary for repudiation that performance be made literally and utterly impossible," but rather "[r]epudiation can result from action which reasonably indicates a rejection of the continuing obligation." Hessler v. Crystal Lake Chrysler-Plymouth, Inc., 338 Ill. App. 3d 1010, 1023 (2003) (finding that under the UCC, defendant's actions "reasonably indicated to plaintiff that defendant would not" perform the contract). The Illinois Supreme Court has held, however, that "the doctrine of anticipatory repudiation requires a clear manifestation of an intent not to perform the contract on the date of performance." Olsen, 124 Ill. 2d at 25. As discussed above, the complaint fails to plead that defendant anticipatorily repudiated the Contract under this standard. Id.

Consequently, the court grants defendant's motion to dismiss plaintiff's anticipatory repudiation claim set forth in Count I.

### C. Count II – Breach of Contract

Count II alleges in the alternative that pursuant to the Contract, plaintiff's early termination of the Contract entitles plaintiff to collect liquidated damages, and defendant's refusal to pay the liquidated damages is a breach of the Contract. Defendant argues that Count II should be dismissed because a breach is required for plaintiff to claim liquidated damages. For the following reasons, the court agrees that Count II should be dismissed.

Defendant argues that as a matter of law, plaintiff is not entitled to liquidated damages for early termination of the Contract without a breach of the Contract by defendant. Under Illinois law, "for reasons of public policy, a liquidated damages clause which operates as a penalty for nonperformance or as a threat to secure performance will not be enforced." Jameson Realty Grp. v. Kostiner, 351 Ill. App. 3d 416, 423 (2004) (holding "[d]amages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss"); Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1290 (7th Cir. 1985) (holding that a liquidated damages clause was an unenforceable penalty because the damages calculation was "invariant to the gravity of the breach"); Nat'l City Healthcare Fin. v. Refine 360, LLC, 607 F.Supp. 2d 881, 884 (N.D.Ill. 2009) (holding that a liquidated damages provision was a penalty because it always provided for more than actual damages); Grossinger Motorcorp, Inc. v. Am. Nat. Bank & Trust Co., 240 Ill. App. 3d 737, 752 (1992) (holding that an optional liquidated damages provision was unenforceable because it operated only when liquidated damages exceeded actual damages).

Section 15 of the Contract provides that "if Officemax terminates this Agreement, [NHS] shall pay to Officemax as liquidated damages and not as a penalty, a sum based on the chart below." Because section 15 of the Contract does not require a breach, the court concludes that plaintiff is not entitled to liquidated damages. Without a breach by defendant, the liquidated damages would operate as a penalty, bearing no relation to the "anticipated or actual loss caused by a breach." Kostiner, 351 Ill. App. 3d at 423. Thus, plaintiff has failed to state a claim for breach of contract based on defendant's refusal to pay liquidated damages. Id.

Consequently, the court grants defendant's motion to dismiss Count II.

## *CONCLUSION*

For the forgoing reasons, the court grants defendant's motion to dismiss plaintiff's complaint.

**ENTER:     March 15, 2017**

_____
**Robert W. Gettleman
United States District Judge**